**IN THE COURT OF APPEALS OF IOWA**

No. 21-0264
Filed June 16, 2021

**IN THE INTEREST OF W.S.,**
**Minor Child,**

**D.S., Father,**
    Appellant,

**R.P., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

A mother and father separately appeal the termination of their respective parental rights. **AFFIRMED ON BOTH APPEALS.**

Gina L. Kramer of Reynolds & Kenline, L.L.P., Dubuque, for appellant father.

Benjamin Hamel of Iowa Legal Aid, Dubuque, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Bridget Goldbeck, Dubuque, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., Ahlers, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GAMBLE, Senior Judge.**

A mother and father separately appeal the termination of their respective parental rights to their child, W.S.  The parents argue termination is not in W.S.'s best interest and request additional time to work toward reunification.

**I. Scope and Standard of Review**

We review termination proceedings de novo.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  "We give weight to the factual determinations of the juvenile court but we are not bound by them.  Grounds for termination must be proven by clear and convincing evidence.  Our primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We typically use a three-step process to review the termination of a parent's rights.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  First, we determine whether a ground for termination under section 232.116(1) has been established.  *See id.* at 472–73.  If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights."  *Id.* at 473 (citation omitted).  Then we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."  *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)). "However, if a parent does not challenge a step in our analysis, we need not address it."  *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).  Following our three-step process, we consider any additional claims brought by the parent.  *See In re T.P.*, No. 19-0162, 2019 WL 3317346, at *2 (Iowa Ct. App. July 24, 2019).

## II. Discussion

### A. Statutory Grounds

The juvenile court terminated the parents' parental rights, pursuant to Iowa Code section 232.116(1)(h) and (*l*) (2021), after the parents stipulated to the statutory grounds. Neither parent attempts to challenge the statutory grounds authorizing termination on appeal. So we move to the next step in our analysis. *See In re Z.S.*, No. 21-0004, 2021 WL 1906363, at *1 (Iowa Ct. App. May 12, 2021).

### B. Best Interest

The parents challenge the juvenile court's determination that termination of their respective parental rights is in W.S.'s best interest.[1] In considering the best interest of W.S., we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *See P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

---

[1] To the extent the father attempts to challenge the best-interest determination with respect to the mother's parental rights, he does not have standing. *See In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005) (requiring parents advance their own claims on appeal and separate from the other parent); *see also In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 n.4 (Iowa Ct. App. Jan. 9, 2020).

The mother's own best-interest argument is couched within her argument for additional time to work toward reunification.

We agree with the juvenile court that W.S.'s best interest requires termination. Both parents point to their bond with W.S. as evidence that termination is not in W.S.'s best interest. But safety is a "defining element[]" of our best-interest analysis. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., specially concurring); *see* Iowa Code § 232.116(2) (noting "the court shall give primary consideration to the child's safety"). Both parents have a history of methamphetamine use. "A parent's methamphetamine use, in itself, creates a dangerous environment for children." *J.P.*, 2020 WL 110425, at *2. That truth was borne out when W.S. tested positive for methamphetamine at the beginning of this case. And we anticipate the parents' drug use will continue. In fact, at the termination hearing, the father admitted to using methamphetamine a little over a week prior. He is not in any substance-abuse treatment program to mitigate concerns of continued use moving forward. And the mother's two most recent sweat patch tests were positive for methamphetamine.[2] The parents' continued methamphetamine use creates a safety risk to W.S.

So termination of their parental rights is in W.S.'s best interest.[3] We move to our next step.

---

[2] We note the mother denies recent methamphetamine use and claims her sweat patch tests were positive due to methamphetamine use by others around her. Even if this is true, it demonstrates the mother continues to interact with methamphetamine users, which increases the likelihood of her relapse. Moreover, the mother conceded had W.S. been in her care, W.S. likely also would have tested positive for methamphetamine.

[3] The mother also argues against termination because it would "prevent [the mother] from having one final opportunity to establish that the child could be safely placed with her." To the extent she attempts to present this argument as a best-interest argument, she misses the mark. When making a best-interest assessment, we do not look to what would be most beneficial to the parent. Instead, we look at whether termination would be the most beneficial option for the

**C. Exceptions to Termination**

For our third step, we consider whether we should apply any of the Iowa Code section 232.116(3) exceptions to preclude termination. Neither parent asks us to apply an exception to termination. So we do not consider this step and instead move on to the parents' final claim.

**D. Additional Time**

Finally, the parents request additional time to work toward reunification.[4] The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). In doing so, the juvenile court essentially must "predict what the future holds for [each parent]." *See In re A.M.*, No. 20-1378, 2021 WL 377103, at *3 (Iowa Ct. App. Feb. 3, 2021).

We first address the father's future prospects. As noted, the father continues to abuse methamphetamine and is not involved in any substance-abuse treatment. The father also is not in any mental-health counseling. And although this family came to the attention of the Iowa Department of Human Services (DHS) in part due to domestic violence, the father has missed several domestic abuse classes. He also testified that he would live with the mother if permitted by DHS

---

child. Here, termination would be the most beneficial option for the child because the parents present safety risks.

[4] Again, to the extent the father attempts to advocate on behalf of the mother, he does not have standing. *See D.G.*, 704 N.W.2d at 460; *see also J.P.*, 2020 WL 110425, at *2 n.4.

and their probation officers, leaving us to anticipate future instances of the father perpetrating domestic violence against the mother. So we cannot point to any specific factor, condition, or expected behavioral change that would occur within six months to obviate the need for removal and allow for reunification.

With respect to the mother's prospects, we reach the same conclusion. The mother has been diagnosed with "schizoaffective disorder, anxiety, and depression." Yet, the mother's mental-health counseling only began about a month before the termination hearing. As previously discussed, the mother has also struggled with methamphetamine use. She attended inpatient treatment in October 2020, though she had to leave due to "an altercation with a roommate." Since then, her two most recent sweat patch tests were positive for methamphetamine. And, as noted, there is a history of domestic violence between the mother and father. But the mother hasn't received any domestic violence counseling. Equally as concerning, the mother admitted she would live with the father if her probation officer and DHS hadn't objected. So when looking six months' into the future, we anticipate the mother will continue to struggle with methamphetamine use and lack necessary insight into her domestically abusive relationship with the father. In short, we do not believe the conditions requiring removal would be eliminated in six months' time.

So we agree with the juvenile court and do not grant additional time to either parent.

**AFFIRMED ON BOTH APPEALS.**